Thank you. Again, I know that you were here, but Justice Holdredge is a member of this panel, and he will be listening to the tapes and participating in the conferencing of the So let's see, Ms. Conway? May it please the Court, Counsel? My name is Kate Conway, and I represent the Plaintiff Appellant in this action, Felicia Gore, as the mother and next friend of the disabled plaintiff, Randall Robinson. This case comes before the court after the trial court, the Honorable Michael Powers, improperly granted Provena St. Joseph Medical Center's motion for summary that Dr. Patricia Pennelly was acting as the apparent agent of Provena Hospital at the time that she provided the allegedly negligent care to Randall. Before I get into the reasons why that ruling was improper, I'd like to review some of the key facts in this case. Randall Robinson was born prematurely. He was diagnosed with hydrocephalus necessitating the implantation of a shunt device. On January 30, 2000, when he was 10 years of age, he began experiencing symptoms of lethargy, headache, nausea, vomiting, among others, and his mother called the paramedics to the family home. At that time, the family home was in Joliet, and the nearest hospital to the family home was Provena Hospital. However, the home where the, or the hospital I should say, where the family and where Randall regularly sought care was Silver Cross Hospital, the reason being that his pediatrician since birth had privileges there. It's undisputed that when the paramedics arrived at the family home in order to transport Randall to the hospital, that his mother asked that he be transported to Silver Cross Hospital. It's likewise undisputed that instead the paramedics took him to Provena Hospital. Before January 30, 2000, neither Ms. Gore nor her son had ever received care from defendant Patricia Pennelly and had never received care at Provena Hospital. This next bit of information is disputed, but in the record at C1768, a note in the, a nursing note appears in the Provena record entered at 1015 a.m., which makes clear that Ms. Gore actually went to Silver Cross Hospital believing that her son had been taken there by the paramedics. And when Provena's attorney had the opportunity to question her and presented her with this nursing note, she agreed and had no reason rather to disagree with the accuracy of that note. The reality is that when Ms. Gore went to Silver Cross Hospital and was unable to find her son, she phoned Provena and she was told by whoever she spoke with at Provena that her son was in fact being treated at Provena. The nursing note entered at 1015 a.m. states, call received from Silver Cross. Mother at Silver Cross very upset because child supposed to be brought to Silver Cross, not St. Joe's. It was explained to patient mother that once patient arrives here, they become our responsibility. Randall was taken by the paramedics from his home to Provena. He arrived there shortly before 10 a.m. and Dr. Patricia Pennelly was on shift at the time and assigned to care for Randall by the hospital. After Ms. Gore went to Silver Cross and was informed that her son was at Provena, she made her way to Provena at some point after 1015 a.m. and arrived to be with her son. And at some point after her arrival, she was provided with and signed a one-page form. And it's this form that serves the entire basis of Provena's motion for summary judgment as well as the entire basis for the lower court's granting of that motion. And this ruling was that the two elements required to substantiate a claim for a parent agency, the holding out of the facility that it's capable of providing for the care and the reliance of the patient or the individual responsible for the patient's care, were established in this case by the paramedics. Secondly, once Ms. Gore was informed that her son was in fact being treated at Provena, she too began to reasonably rely on Provena to provide the judgment back up. How is it that the paramedics had the ability to act on her behalf, substitute their judgment for hers? What is it exactly that you're saying that they did? What is it that makes them able to do that? Well, in the Monty v. Silvercross case, a very similar circumstance occurred. In that case, this court, a third district case, this court held that the paramedics, when they are in control of the patient's care, their attitude, their decision to go to a given hospital can be substituted in place of the patient and the patient will be permitted to maintain a claim of a parent agency against the hospital. In this case, just like in the Monty case, Randall was a minor at the time that this all occurred, a 10-year-old boy, and so he certainly was not capable of deciding where he should be receiving care, and his mother's decision was not followed. She wanted her son to be treated at Silvercross Hospital, so the paramedics clearly made the decision to take Randall to the closer hospital, and in Monty, the court specifically reasoned that when the paramedics do that, the implication becomes clear that they're choosing to rely on that hospital to provide for that care. Did Monty have a consent form? Monty did not have a consent form. The patient in that case was unconscious. However, a consent form would have made no difference. When you're looking to the paramedics and their reliance and their decision-making, that decision-making was already done well before the consent form ever enters into the hospital. So the presumption is not rebuttable? No, Your Honor. I mean, under the Monty case, there's no qualification relating to later information about the employment status of the physicians. In that case, both And in this case, we can go further. In this case, once Ms. Gore finds out that her son is being treated at Provena, she too begins to rely on the hospital to provide the care, not only knowing that it's an emergency facility and that it has emergency services available at it, but she's actually told on the phone that now that her son is there, he is, quote, our responsibility. She's affirmatively told that the hospital is treating and is responsible for her son, and she reasonably begins to rely on that representation. Once she's given this consent form, the analysis is already complete. The holding out and the reliance have already been established. The patient care is already being rendered, and the consent form cannot undo those two elements. How was the holding out done? How was the holding out done in this case? Well, in regards to the paramedics, Provena obviously is an area hospital. It holds itself out as providing emergency room services under the Gilbert analysis set forth by our Supreme Court. They're holding themselves out as a facility capable of providing emergency room care and of accepting patients like Randall Robinson, which is the reason why the paramedics know that they're a facility available to take patients like this. So they're holding themselves out as having that functionality as being able to receive those patients, and the paramedics act in reliance on that representation, and that's why they took Randall to Provena eventually, too. Now, the wording... The emergency people are being sued, too, aren't they? The emergency room people, meaning the paramedics? The paramedics. The paramedics are not being sued in this case. It's not, okay, that's... No, so Prairie Emergency Services was the corporation that the ER physician was practicing under, but no. So that was the other, so they're the ones who have the contract with the hospital? Correct. Okay. Right, so yeah, the paramedics are not a party to this suit, and they were in fact never deposed in this case, so no, they're separate. But once the wording of the consent form does not, it's not relevant in the sense that these elements required to establish a claim of a parent agency were already established by the time the consent form ever came into play. But if we look at the consent form, if the court believes that... But I want... Can I go back now to the paramedics again? Sure. So you're saying the paramedics, they were serving as... When they made the decision, they were binding the hospital to the mother as far as holding themselves out to providing the emergency care? Yes, yes, Your Honor. So the decision made by the emergency people, and their decision then bound the hospital to the mother? I'm not sure if I completely understand. So that was the holding out? So because they have emergency care services, and the emergency people knew it, and so they take the child to that place? Right. That's all part of the holding out. Right. Yes. And that's exactly what happened in the Monte case. Although we have a conscious plaintiff here, he's equally incapable of making a decision relative to where he should be treated. And his mother was not in control of his care, because she wanted him to be treated at another hospital, and in fact went to that hospital, believing that that's where he was being treated. And when she found out that he had not been transferred or brought to Silver Cross, she was, quote, upset, according to the nursing note. It seems to me that the holding out with regard to a paramedic is not that the hospital itself is providing the service, but that this is a hospital where the patient can get the service that's needed. And the consent form determines the legal relationship between the people who are actually doing the services and the hospital where the services are being performed. Which seems to me to be different from what you're saying, which is that the hospital is saying, when the paramedics take the patient there, that that's because the hospital is saying, we are legally responsible for the service that's being provided to your child. Well, Your Honor, under the Gilbert analysis, when a care facility, a hospital, an emergency room, holds itself out as being able to provide those services, and does so without informing anybody about the nature of these services and who specifically they're provided from, then that's enough to establish the holding out requirement. And here, when you look to the beliefs and the actions of the paramedics, it's clear that they were acting in reliance on the ability of Provena to provide the necessary care to Randall Robinson. When the form enters into the equation, when it's presented to Ms. Gore well after the care has already been initiated, after Dr. Pennelly has already been assigned a care for the patient, and certainly well after the paramedics made that initial decision to bring Randall to Provena, that analysis is already complete. But should this court determine that the form is in some way relevant, this form in and of itself is ambiguous. It certainly doesn't put Ms. Gore on notice that this care is being provided by independent contractors or that the hospital is attempting to disclaim responsibility for the acts of physicians operating within its walls. Well, the form contains four separate sections. The first, entitled Consented Treat, contains a sentence, the second sentence, that says, I understand that all doctors furnishing services to me, including emergency department physicians, radiologists, anesthesiologists, pathologists, cardiologists, surgeons and the like, are not employees nor agents of St. Joseph Medical Center. But a couple things. This form is printed on letterhead, Provena letterhead, which in the upper left corner has in capitalized larger font, Provena, under that smaller lower case font, St. Joseph Medical Center. It does not go on to explain who in fact does employ these physicians and it certainly doesn't go on to explain that the hospital is attempting to limit its liability or disclaim responsibility for any of the actions of its independent, of physicians offering care within its facilities. Which pretty much speaks for itself, doesn't it? I disagree, Your Honor. And the other cases cited by Provena in this case contain consent forms that elaborate and contain more detail and a more descriptive explanation as to who does employ these physicians, as to the physician's independent contractor nature and their having privileges at a given facility. And some of these forms in the cases cited by defense counsel actually go on to specifically state that the hospital is not responsible for the care or the miscare provided within its facility. None of that is made clear in this form. It's a simple, broad statement that one entity, St. Joseph Medical Center, does employ these physicians. There's certainly no explanation and a reader of this form could understand that that means that while this hospital doesn't, Provena does. There's no inclusion of Provena Hospital in this disclaimer. So the form in and of itself is ambiguous. In addition to all the other circumstances involving the presentation of this form that raise multiple questions of fact. You're saying it's ambiguous because of omission? Because of the lack of description relative to all the other forms that have been deemed by this Court and others to be sufficient to inform the reader of the lack of liability or the disclaimed liability on the part of the hospital. Here, this form stops at simply just stating that these doctors are not employees of St. Joseph Medical Center. Or agents. It doesn't go on to explain that Provena is not employing them, that they're employed by an outside entity. There's no understanding. No layperson reading this language would understand what the hospital is attempting to relay here. It's simply unclear to the reader and for that reason it's not dispositive of the issue of apparent agency in this case. What is unclear about saying this person is not an employee of this hospital? How is that ambiguous? It's entirely ambiguous because it's not explaining that by not being an employer or agent of this one entity, St. Joseph Medical Center, that that then means that the hospital, Provena Hospital, cannot or is not responsible for care going on within its walls. As both the Gilbert and York Courts have noted, it's reasonable, it's natural that a layperson would understand, or I'm sorry, would believe that the care being provided within a hospital's walls are being provided by employees of that hospital. And this one sentence simply doesn't go far enough. It doesn't provide an explanation that a layperson would understand that the hospital is not liable for the actions of physicians providing care within its walls. Okay. Thank you. Thank you. Ms. Lesher? Good afternoon, your honors, counsel. My name is Nancy Lesher and I represent Provena Hospital's joint business as St. Joseph Medical Center. I'd like to just clarify a couple of facts and respond to some of the facts that were discussed. First of all, it is an uncontroverted fact that the plaintiff, the mother, never relied on Provena for the provision of medical care. So the holding out element is not met here because she was relying on Silver Cross and the EMTs decided to take the son to St. Joe's or Provena. The plaintiff signed an affidavit saying she understood this was because it was the closest hospital and there is a statute in that regard. This was not an emergent situation either. This is a boy who had vomited the night before and was showing cold symptoms. According to the plaintiff's deposition, she was in fact at her son's side the whole time. I believe this is a judicial admission as I explained in my brief and the effect of a judicial admission is to take that fact out of controversy because it's an unequivocal admission by the plaintiff. I'd like to refer, there's been discussion about a telephone call at 1015. This call, this note does not say the mother called Provena. Rather, Silver Cross called Provena and said the mother was at Silver Cross very upset because the kid was supposed to be at Silver Cross and then it says, not that Provena told her, but that it was explained to the patient's mother that once the patient arrives here at Provena, they become our responsibility and the mother was requested to go to St. Joe's. If you look at the next note at 1020, it says examined by ER MD, the emergency room doctor, call to Dr. Jane, mother at, it looks to me like bedside, orders were received about taking the child to a CT. It's uncontroverted that regardless of when the mother arrived, she signed this consent. Your Honor, I, Justice McDade, I concur, there's nothing unclear about saying that the hospital, the physicians at the hospital are not hospital employees. That was unambiguously stated by the consent. There are obviously just two elements here. One is holding out element to establish an apparent agency claim, but this is meant only if the hospital holds itself out as a provider of medical care, quote without informing the patient that, unquote, the care is being provided by independent contractors, non-hospital employees. That's the York case and Gilbert. This is, this, in the Monti case, I think that was 94, in the Monti case, this court reasoned that the emergency room people taking, I mean not the emergency room people, the EMT, transported to the personal physician they were taking to, it would be the people at the hospital who would be taking to them. So it was, the indication being that the hospital was taking care of the person. This is 1994. Right, and in 20, I think it was 2014, this court decided the Steele case, and that's actually very much on point to the argument that the EMT's reliance on the hospital was the only reliance that counts because it chose the hospital. That's exactly what happened in Steele. In Steele, it was an adult patient. The mother directed the EMT's to go to a certain hospital. When they got to the hospital, the adult patient signed a consent form, which is, as Justice McDade pointed out, that consent creates a legal relationship between here, the mother of the minor patient, and the hospital. This court rejected and entered JNOV saying, look, the only evidence of reliance or the apparent agency was disclaimed in this consent form that was signed by the adult patient who was dead. She died eventually, and so there was no other evidence on that. Steele stands for the proposition that regardless of who chooses the hospital, that consent is operative, and that's exactly what's going on here. The mother signed the consent when she arrived at Provena, whenever that was, and I think it's always the plainest burden to prove the elements. The plaintiff here has not proven when she arrived, what treatment there was. She argues that, oh, well, the treatment had already started, so the consent doesn't count. Well, obviously the consent counts, because if nothing else, it means that they consented to continued treatment by this independent physician. At the point she signs the consent to treatment at Provena, she simultaneously knows that that ER doc is not a hospital employee. So she cannot meet either element of a parent agency because the hospital did inform her that the doctor would not be a hospital employee, and cannot meet the element of reliance either, because it's not again, York Supreme Court says, it's not reasonable to rely on employment or agency relationship if the patient is told that the physician is not a hospital employee. You know, the reliance on these nursing notes to me are pretty interesting, because they show very little, and there's no other records, and the plaintiff didn't show when she arrived, how much treatment had occurred, etc. We do know that vitals were taken. If you assume that the mother in that silver cross called, which is not what the nursing note says, the nursing note says silver cross called, and the mother was told, if care is at St. Joseph you have to go there. We don't know who said that. It looks to me like silver cross did. Five minutes later at 1020, four things are recorded. A medical exam, and we don't know if the doctor just walked in and looked at him, or if she actually examined him. There's an order for a CT scan. Three, there's a call to Dr. Jane, and finally the note that looks to me like mother at I think it says bedside, but whatever. It's clear that the date of recording those events was 1020. It's not when the events themselves occurred. Those things could not have occurred within 60 seconds, which is essentially the premise of the plaintiff's argument. It's uncontroverted that the mother is there for the vast majority of the time. The son is there for four hours, relatively in stable condition. She was there during his discharge. There's no evidence of the distance between Silver Cross and Provena Hospital. There's no evidence about when the plaintiff arrived. This court can take judicial notice where these hospitals are. It's really literally down the road, a matter of maybe 10 minutes apart. But she also never proved in this case what treatment was provided beyond taking the vitals and apparently a phone call with Dr. Jane, walking into the room or perhaps examining him, and a CT order. The fact that treatment started did not eradicate the fact that the consent was provided. The plaintiff shortly after the child arrived consented to continued treatment by a non-hospital employee. If I may have a moment, Your Honors. The other fallacy about the argument that only the EMT's reliance and choice of hospital counts is that the fact that the EMT's are legally authorized to transport patients to hospitals doesn't make them in this case the guardian of this minor. They had no legal authority beyond transporting him to the closest hospital and they did that. It was the mother who was the legal guardian who had the sole authority to sign that consent and she voluntarily did so. We know she had a car that day. We know that she was able to drive her son around because she drove her son to Silver Cross and to Dr. Jane's office the day after that. So if she didn't want to be at Provena, she could have driven to Provena, gotten her son and taken him to Silver Cross. Again, he's presenting with one incident of vomiting the night before and a cough or sneeze and sore throat. So it's not that this was an emergency situation. If she really wanted to go to Silver Cross and not consent to a non-hospital employee care, Dr. Pinelli, she could have done so. In conclusion, if there are no questions, I'd just like to reiterate that the plaintiff cannot freeze the facts at the point that the EMTs pick up her son and take them to Provena. The fact that they did pick her up and deliver to Provena does not make the EMTs a legal guardian able to give consent or not. The plaintiff consented to treatment or the same time she was aware that the doctor was not a hospital employee and the fact that another chose the hospital doesn't invalidate the consent as this court held in Steele. Because the plaintiff was clearly and unambiguously told that all physicians were independent and not hospital employees and she consented to treatment, she cannot show either holding out or reasonable reliance. Is there no other questions? With regard to Monty and Golden, two cases that your opponent relies on heavily, how do you distinguish them? Well, I would distinguish them by Steele. If you have somebody capable of signing the consent, then Monty and Golden don't apply. That's a very narrow and limited circumstance where the court has held, well the patient's unconscious, how can they sign a consent? It's just physically unable. In this case, the plaintiff's mother was not unconscious and fully capable of reading and signing this consent. Anything further? No, thank you. Thank you, Your Honor. Ms. Conway, any rebuttal? There's a couple quick things I'd like to address. In response to Defenda's argument that Ms. Gore never relied on Provena, that's simply untrue. She was specifically informed, whether it be through an intermediary at Silver Cross or whether it be by participating directly in a phone conversation with somebody at Provena, that her son was now Provena's responsibility. She certainly was relying on Provena to provide for her minor son's care. She was not providing on, relying on I should say, and had never had treatment from Dr. Pennelly or at Provena previously. So she was certainly relying on the hospital and not on a specific physician at Provena, which is sufficient under the law. Sufficient for what under the law? Sufficient for the reliance element. She was certainly relying on the hospital. A consent form that is limited and that is provided to her well after the fact that well after treatment had been initiated cannot undo this reasonable reliance that she had on Provena Hospital, on the hospital itself and not on a specific physician. Regarding the Steele case, that case is not instructive here. That case involves a consent form which was presented to the daughter upon admission. And that form, unlike the form in this case, contained much more detailed language. That form is nothing like the form in this case. In fact, it says in bold capital letters, statement of understanding, physicians are not employees of the medical center. And then goes on to explain that, oh I'm sorry, I'm looking at, I'm sorry, I'm looking at the wrong one. The Steele case does go into much greater detail, but I apologize. I was just quoting from a different consent form. Goes on to explain that each of the medical practitioners exercises his or her own independent medical judgment and is solely responsible for the care, treatment and services that they order, request, direct and provide. It goes into much greater detail regarding the independent nature of the physicians providing care within its facilities. It does not contain a one line simple statement like the form that we have in this case. The quotation from the plaintiff's deposition that she was always by her son's side. That question came in the middle of a line of questionings in a chronology that already had Ms. Gore at the hospital. So sure, once she arrived at the hospital, she was always by her son's side. She mentioned that she only left if she had to go to the bathroom or get coffee. She otherwise remained with him. That's the truth. This doesn't, it's not a judicial admission. It's not inconsistent with her having gone to Silver Cross Hospital. In fact, when she was presented with this record from Silver Cross Hospital, she had no reason to disagree with the veracity of that note. So at most, it raises a question of fact. York and Gilbert, both of those cases direct courts to consider the realities of modern hospital care in deciding issues of apparent agency. And in this case, the reality of hospital care is that hospitals have relationships with EMT services. They hold themselves out to those EMT services as being capable of providing trauma care, emergency room care, and those sorts of things. And in this case, the paramedics relied on the Provena Hospital's representation that they could provide emergency services to a patient just like Randall Robinson. But that was not the legal question of who's responsible for those services. The services can be gotten at this hospital. We provide them. That's a different issue from whether, from who's responsible. It's not in order to plead a claim of apparent agency or to maintain a claim of apparent agency. As the courts, as our Supreme Court has set forth, you need to prove a holding out and a reliance. In this case, those two elements are established both by the paramedics who were undoubtedly the ones in control of and those responsible for making the decision to take Randall to Provena. They were also reestablished via the actions and beliefs of Ms. Gore once she was informed that her son was now being treated at Provena. So both of these elements have been established in this case. Both are present and a consent form provided only after the fact merely raises a question of fact. It is not dispositive of the issue of apparent agency here. And for those reasons For those reasons, Felicia Gore, on behalf of her disabled son, Randall Robinson, respectfully requests that this court reverse the trial court's decision and permit reinstatement of claims against Provena Hospital. Thank you. We thank both of you for your arguments this afternoon. The matter will be taken under advisement in conjunction with Justice Holdridge and a written decision will The court will now stand in recess until October.